**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10–cv–02529–WJM–KMT

DAVID GUARA,

      Plaintiff,

v.

CITY OF TRINIDAD, a City Municipality, and
CITY OF TRINIDAD FIRE DEPARTMENT,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff David Guara brings this action against Defendant City of Trinidad[1] alleging race and national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000*e et seq* ("Title VII").  Before the Court is Defendant's Motion for Summary Judgment ("Motion").  (ECF No. 38.)  For the reasons set forth below, the Motion is granted in part and denied in part.

### I.  STANDARD OF REVIEW

Summary judgment is appropriate only if there is no genuine issue of material

---

[1] Plaintiff also named the City of Trinidad Fire Department as a Defendant in this case. (ECF No. 1.)  Defendant argues that the Fire Department is not a separate entity and the claims against it should be dismissed.  (ECF No. 38 at 27.)  Plaintiff has failed to respond to this argument and the case law supports Defendant's position.  *See PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F.Supp. 808, 827 (D.N.J. 1993) ("The numerous courts that have considered the question of whether a municipal police department is a proper defendant in a § 1983 action have unanimously reached the conclusion that it is not.") (collecting cases). Therefore, the Court will dismiss all claims against the City of Trinidad Fire Department and dismiss the Fire Department as a party.

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. EVIDENTIARY ISSUES

Defendant raises several evidentiary issues in conjunction with its Motion for Summary Judgment. First, in its Reply Brief, Defendant argues that the Court should disregard exhibits 8, 9, and 10 to Plaintiff's Opposition. (ECF No. 62 at 10-11.) These exhibits are the affidavits of Plaintiff David Guara, Michael Trujillo, and Robert Sandoval. (ECF Nos. 51-9, 51-10, & 51-11.) Defendants argue that some statements in these affidavits are contrary to the same witness's deposition testimony and that

other portions of the affidavits are not based on personal knowledge. (ECF No. 62 at 10-11.)

In ruling on a motion for summary judgment, the Court must consider only admissible evidence. *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995). Under Rule 56(e), evidence offered in opposition to a motion for summary judgment must be " 'made on personal knowledge . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the witness is competent to testify to the matters' set forth therein." *Id.* Accordingly, the Court will ignore any portions of the affidavits that are not based on the declarant's personal knowledge.

Additionally, the Court must disregard any allegation in an affidavit that directly contradicts with a prior sworn statement if the Court concludes that the declarant is attempting to create a sham fact issue. *Law Co, Inc. v. Mohawk Constr. & Supply Co.*, 577 F.3d 1164, 1169 (10th Cir. 2009). While Defendants argue generally that "[t]here are various instances where the affidavits are merely an attempt to rehabilitate problematic testimony and/or attempt to create 'a sham fact issue'", Defendants have not directed the Court to any particular portion of the affidavits that is directly contrary to a particular portion of the same person's deposition. If Defendants wanted the Court to disregard a certain statement or portion of the affidavit, they needed to provide this specific information. The Court will not undertake to compare the deposition testimony to the affidavits on its own. Accordingly, Defendant's request that the Court ignore portions of the affidavits of Plaintiff, Michael Trujillo, and Robert Sandoval based on prior inconsistent testimony is denied.

Defendants have also filed a Motion to Strike asking the Court to strike the

following exhibits from Plaintiff's Opposition to the Motion for Summary Judgment: (1) Exhibit 4 — Memo from Howard to Bulson; (2) Exhibit 11 — Determination of Colorado Civil Rights Division; (3) Exhibit 12 — Photograph; (4) Exhibit 15 — Photographs; (5) Exhibit 23 — Handwritten document; and (6) Exhibit 24 — Letter from Trujillo to Soltis. (ECF No. 56.) Plaintiff opposes the relief sought. (ECF No. 70.) As set forth below, none of the exhibits at issue in the Motion to Strike were relied upon by the Court for resolution of the Motion for Summary Judgment. Because the Motion to Strike only sought to preclude the Court's consideration of these exhibits for purposes of summary judgment, and the Court has not relied upon them in making its ruling, the Motion to Strike is moot. Accordingly, the Court denies Defendant's Motion to Strike. (ECF No. 56.)

### III.  FACTUAL BACKGROUND

Plaintiff David Guara is Hispanic and his familial bloodline comes from Spain and France. (Pl.'s Dep. (ECF No. 38-1) pp. 49-50.) Plaintiff has been employed in the Fire Department at the City of Trinidad since May 2001. (*Id*. at 9.) From the time Plaintiff was hired until May 1, 2008, James Bulson was Chief of the Trinidad Fire Department. (Bulson Dep. (ECF No. 38-4) p. 4.) On May 1, 2008, Leroy Perea became Chief. (Perea Dep. (ECF No. 38-5) at 9; ECF No. 38-17.)

Since shortly after Plaintiff was hired by the Fire Department, various co-workers and supervisors have made derogatory comments to him about his race and national origin. (Pl.'s Aff. (ECF No. 51-9) ¶ 3.) They made fun of the way Plaintiff pronounces his name and the fact that Plaintiff traces his lineage to Spain and France rather than Mexico. (*Id*.) When Plaintiff would explain the European origin of his lineage, his co-

workers and supervisors would often say that he was "just a Mexican". (*Id*. ¶ 16.) Plaintiff was called a "spic", "coyote"[2], and "Spaniard" on at least a weekly basis with the frequency of the use of these terms increasing in 2007 and 2008. (*Id*. ¶¶ 3-4.) Plaintiff estimates that he was called a "spic" at least fifty times. (*Id*. ¶ 15.) Plaintiff's co-workers and supervisors would also use the terms "Spanish", "Conquistador", "Frenchman", and "Indians" to refer to Plaintiff in a derogatory manner. (*Id*. ¶ 16.)

In addition to these verbal incidents, Plaintiff's locker was vandalized in 2007 with a "Pac-Man" drawn on it. (*Id*. ¶ 12.) Plaintiff alleges that this relates to his race and national origin because he pronounces his last name in a manner that is similar to the sound that the Pac-Man video game character would make, *i.e.*, "wada, wada, wada". (*Id*. ¶ 15.) In 2008, a sticker on Plaintiff's locker was defaced to look like a "cholo"[3]. (*Id*. ¶ 12.)

Plaintiff repeatedly reported his co-worker's and supervisor's behavior to then-Chief Bulson. (Pl.'s Aff. ¶ 14.) Plaintiff estimates that he reported such behavior to Chief Bulson "about a couple dozen times between 2002 and 2008." (*Id.*) Chief Bulson's response was that Plaintiff should "take it out back and go fist fight." (*Id.*) When he was a Captain of the Fire Department, now-Chief Perea was present many times when Plaintiff's co-worker called him a "spic". (*Id*. ¶ 15.) Additionally, Plaintiff reported this behavior to Captain Tim Howard at least a dozen times. (*Id*. ¶ 14.)

On April 14, 2008, Plaintiff was in the doorway to the bedroom getting ready for

---

[2] The term "coyote" is Spanish slang for "mixed breed". (Pl.'s Aff. ¶ 16.)

[3] Plaintiff alleges that the term "cholo" is a slang term for a "dirty Mexican". (Pl.'s Aff. ¶ 15.)

his shift and overheard Ken Baker, Dave Bacharach, and Tim Howard talking about him in a racially derogatory manner. (Pl.'s Aff. ¶ 5.) Plaintiff had begun carrying a tape recorder around with him and, on this occasion, recorded the conversation. (Compl. ¶ 18.) Baker eventually invited Plaintiff to join the conversation but Plaintiff declined. (ECF No. 38-15; Pl.'s Aff. ¶ 6.)

At the conclusion of the conversation, Plaintiff informed Captain Howard that he wanted to see Chief Bulson. (Pl.'s Aff. ¶ 7.) When Chief Bulson arrived at the fire station, Plaintiff informed him that he was tired on the "on-going harassment" and took the tape-recorder out of his pocket. (*Id.*) Plaintiff asked Bulson "What do I have to do, record them for you to do something about this?" (*Id.*)

Chief Bulson also spoke with Jim Soltis, Trinidad's City Manager, about this incident and Soltis recommended that Bulson speak with the City Attorney about Plaintiff's actions. (Soltis Dep. (ECF No. 38-7) pp. 28-29.) Chief Bulson later met with Captain Howard and told him that, if Plaintiff took the tape downtown, he would be met by a police officer. (ECF No. 38-15 at 3.) Howard passed along Bulson's message to Plaintiff. (*Id.*) In late April, Baker, Bacharach, and Howard sent letters to Soltis asking that some action be taken against Plaintiff for unlawfully recording their conversation. (ECF No. 38-15.)

On May 1, 2008, Perea took over as Chief. (ECF No. 38-17.) That day, Perea had a meeting with Plaintiff regarding whether disciplinary action would be taken for Plaintiff having tape-recorded his co-worker's conversation without their knowledge. (*Id.*) On May 9, 2008, Chief Perea sent Plaintiff a letter stating that he was suspended for two shifts without pay. (*Id.*) Chief Perea's stated basis for this suspension was that

6

he believed Plaintiff's tape-recording on April 14, 2008 "constituted conduct subversive to the laws of the state and nation, as there are both state and federal laws prohibiting eavesdropping" and because "your conduct is unbecoming of an employee of the City. Such conduct does not further the effective functioning of the Fire Department or the trust and camaraderie essential to that functioning." (*Id.*)

On October 16, 2010, Plaintiff initiated this action. (ECF No. 1.)

## IV.  ANALYSIS

As stated above, Plaintiff brings two Title VII claims[4]: (1) hostile work environment based on race and national origin; and (2) retaliation. (ECF No. 58 at 3.) The familiar *McDonnell-Douglas* burden-shifting test applies to both of Plaintiff's claims. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of hostile work environment or retaliation. *Id*. If Plaintiff makes out a *prima facie* case, the burden shifts to Defendant to come forward with a legitimate, non-discriminatory basis for its action. *Id*. If Defendant does so, the inference of discrimination and/or retaliation drops out and the burden shifts back to Plaintiff who must offer evidence to show that race or national origin was a determinative factor in the employment decision or that Defendant's non-discriminatory reason was merely pretext. *Id.*

Defendant moves for summary judgment on both of Plaintiff's claims. The Court

---

[4] Plaintiff's Complaint also brings a cause of action pursuant to 42 U.S.C. § 1983 alleging a violation of his Due Process and Equal Protection rights. (ECF No. 1 p. 4.) However, in his Opposition to the Motion for Summary Judgment, Plaintiff states that he is pursuing only "two claims: hostile work environment and retaliation." (ECF No. 51 at 2.) Accordingly, the Court finds that Plaintiff has abandoned any claim arising under 42 U.S.C. § 1983.

7

will address each in turn below.

**A.     Hostile Work Environment**

Plaintiff alleges that he was subjected to a hostile work environment due to his race and national origin.  To meet his *prima facie* burden with respect to his hostile work environment claim, Plaintiff is required to show: (1) his workplace was "permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of [his] employment," and (2) that he "was subjected to this abusive environment because of his" race and/or national origin.  *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1170 (10th Cir. 2007).  In determining whether an actionable hostile work environment existed, the Court must consider "all the circumstances," *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002), viewed through the perspective of a reasonable person in Plaintiff's position.  *Montes*, 497 F.3d at 1170.

Defendant contends that Plaintiff has presented evidence of only a few race-based incidents and that these "isolated" incidents do not meet Plaintiff's burden of showing a workplace that is permeated with severe or pervasive discriminatory conduct.  (ECF No. 62 at 14.)  The Court disagrees.  Plaintiff has submitted evidence showing that, at least once a week, and more often in the years 2007 and 2008, he was referred to as "just a Mexican", called a "spic", or made fun for being a "Spaniard".  (Pl.'s Aff. ¶¶ 3, 15.)  Plaintiff was also called a "coyote", "conquistador", and generally ridiculed about his heritage.  (*Id*. ¶¶ 16-17.)  Plaintiff has also submitted evidence that his locker was vandalized twice and that both incidents were covertly race-based.  (*Id*. ¶ 12.)  Contrary to Defendant's argument, this evidence describes more than simply isolated incidents

or race and national origin harassment.

Defendant also argues that Plaintiff continues to work as a firefighter for the City so he cannot possibly show that his work conditions were altered by the environment. (ECF No. 62 at 15.)  However, the severity of the workplace is to be judged from an objective perspective,[5] based on how a reasonable person in the Plaintiff's situation would be affected by the conduct.  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).  The fact that Plaintiff is still working at the same job and appears to be doing so successfully does not mean that his hostile work environment claim must fail.  *See Davis v. U.S. Postal Servs.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (plaintiff not required to show that she quit or want to quit her job); *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (plaintiff need not show that her work suffered as a result of the hostile work environment).

The Tenth Circuit has held that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact."  *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999) (internal quotation omitted).  When allegations are made which, if believed by a jury, may constitute a severe or hostile work environment, the Court cannot enter summary judgment against a Plaintiff.  *Id*.  Viewing the facts in the light most favorable to the Plaintiff, the Court finds that there is sufficient evidence from which a reasonable jury could find that Plaintiff was subjected to a severe or hostile work environment based on

---

[5] The Court must also consider whether a plaintiff was subjectively affected by his work environment.  *Oncale*, 523 U.S. at 81.  However, Defendants do not argue the subjective prong of the analysis in this case.

his race or national origin.

Accordingly, Defendant's Motion for Summary Judgment is denied as to Plaintiff's hostile work environment claim.

**B.     Retaliation**

Plaintiff brings a claim for retaliation based on his two-shift suspension without pay after he reported his co-worker's harassment on April 14, 2008. (ECF No. 51 at 33.) To establish a *prima facie* case of retaliation, Plaintiff must show: (1) he engaged in a protected activity; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).

Defendants argue that Plaintiff has failed to meet his *prima facie* burden with respect to his retaliation claim because Plaintiff did not file a discrimination claim with the Colorado Civil Rights Division until after he was suspended. (ECF No. 62 at 17.) While filing a formal discrimination charge undoubtedly constitutes protected activity, that is not the protected activity alleged here. Plaintiff alleges that he engaged in protected activity when he repeatedly informed Chief Bulson about "the derogatory racial and ethnic name calling". (Pl.'s Aff. ¶ 5.) "It is well-established that an employee's express complaints to supervisors about perceived discriminatory practices constitutes protected activity." *Wirtz v. Kansas Farm Bureau Servs., Inc.*, 274 F.Supp.2d 1198, 1212 (D. Kan. 2003). Therefore, the Court finds that Plaintiff has presented evidence that he engaged in protected activity before he was suspended.

Defendants do not argue that Plaintiff has failed to satisfy the other prongs of his *prima facie* case. (ECF No. 62 at 17-18.) There is little doubt that a suspension without pay is an adverse action. *Russell v. Bd. of Trustees of the Univ. of Illinois*, 243 F.3d 336 (7th Cir. 2001). Moreover, Plaintiff reported his co-worker's harassment at the same time he informed Bulson that he had tape recorded the conversation. This temporal link is sufficient to meet Plaintiff's *prima facie* burden with respect to causation. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999). Accordingly, the Court finds that Plaintiff has satisfied his *prima facie* burden.

Defendant contends that Plaintiff was suspended, not because he reported discriminatory behavior, but because he unlawfully eavesdropped on his co-workers' conversation. (ECF No. 62 at 18.) In the letter from Chief Perea to Plaintiff regarding the suspension, Perea states: "I therefore believe that it is likely that the conduct in question constituted conduct subversive to the laws of the state and nation, as there are both state and federal laws prohibiting eavesdropping." (ECF No. 38-17.) Additionally, Chief Perea states that Plaintiff was suspended because his taping of his co-workers is conduct "unbecoming of an employee of the City. Such conduct does not further the effective functioning of the Fire Department or the trust and camaraderie essential to that functioning." (*Id*.)

In the state of Colorado, it is unlawful for any person not visibly present during a conversation to record such conversation. Colo. Rev. Stat. § 18-9-304(a). In making the decision to suspend Plaintiff, Chief Perea had statements from the three participants of the allegedly taped conversation—Kenney Baker, Dave Bacharach, and

Tim Howard—all stating that Plaintiff was in the bedroom while they were talking in the day room. (ECF No. 38-15 pp. 1-3.) Chief Perea also had a statement from then-Chief Bulson that Plaintiff had played the tape recording for him. (*Id*. at 4.) Because this evidence supports the reason given by Defendant for the suspension, the Court finds that Defendant has put forth a legitimate, non-discriminatory basis for Plaintiff's suspension. *See Stewart v. I.N.S.*, 762 F.2d 193, 197 (2d Cir. 1985) (belief that employee had committed crime was legitimate, non-discriminatory basis for suspension).

Because Defendant has articulated a non-discriminatory basis for Plaintiff's suspension, the presumption of retaliation drops out of the case. *Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1307 (10th Cir. 2005). The burden shifts back to Plaintiff to show that the proffered basis for his suspension was a pretext for unlawful retaliation. *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).

Plaintiff contends that Defendant's proffered basis was pretext because he now alleges that "there was no tape recording." (ECF No. 51 at 35; Pl.'s Dep. at 54-55.) To the extent Plaintiff is denying that he taped the April 18 conversation, he is not permitted to do so. Plaintiff's Complaint states that "[w]hen Plaintiff tape-recorded a conversation in which co-workers engaged in discriminatory and obscene statements directed at Plaintiff, he was threatened with termination because he tape-recorded the conversation." (Compl. ¶ 18.) Because Plaintiff affirmatively alleged in his Complaint that he had tape-recorded the disputed conversation, he may not offer contradictory evidence on summary judgment. *See U.S. Energy Corp. V. Nuken*, 400 F.3d 822, 833

(10th Cir. 2005) (a formal statement in a pleading constitutes a judicial admission); *Keller v. United States*, 58 F.3d 1994, 1198 n.8 (7th Cir. 1998) (judicial admissions are binding and cannot be later controverted). Thus, the Court finds that there is no factual dispute as to whether Plaintiff tape-recorded the conversation.

Plaintiff next argues that he was permitted to record the conversation because he was visible to Baker, Bachrach, and Howard while the conversation was taking place. (ECF No. 51 at 34-35.) If Plaintiff was in fact visible, his tape-recording of the conversation would not violate Colorado law, *see* Colo. Rev. Stat. § 18-9-304(a), and this would call into question whether Chief Perea's belief that Plaintiff violated state law was correct. However, in evaluating pretext, the relevant inquiry is not whether the Defendant's proffered bases for the suspension were "wise, fair or correct"; rather, the Court must consider whether Chief Perea "honestly believed those reasons and acted in good faith upon those beliefs." *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004). Plaintiff has presented no evidence rebutting Perea's statement that, at the time he suspended Plaintiff, he believed that Plaintiff had likely committed a crime. Thus, Plaintiff has failed to show a genuine dispute of fact as to whether Chief Perea honestly believed that he was suspending Plaintiff for unlawful eavesdropping.

Plaintiff also argues that Defendants were not actually motivated to suspend him by his tape-recording of the conversation because no criminal charges were pursued. (ECF No. 51 at 34-35.) However, whether or not criminal charges were filed is irrelevant to whether Plaintiff's suspension was motivated by retaliation. *English v. Colorado Dep't of Corrections*, 248 F.3d 1002, 1010 (10th Cir. 2001) (district attorney's decision not to prosecute was "simply irrelevant to the question of whether [the

plaintiff's] termination was actually driven by the evidence of misconduct.").

As previously stated, Plaintiff has failed to show a genuine dispute of fact as to whether Chief Perea honestly believed that Plaintiff had violated a state law at the time he made the decision to suspend Plaintiff. Additionally, Chief Perea informed Plaintiff that he was also being suspended because tape-recording his co-workers undermined the "trust and camaraderie essential" to the functioning of the fire department. Plaintiff has offered no argument or evidence showing that this explanation was simply a pretext for retaliation. Therefore, the Court finds that Plaintiff has failed to meet his burden of showing that a genuine dispute of fact exists as to whether Defendant's proffered non-retaliatory basis for Plaintiff's suspension was pretextual. Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiff's retaliation claim.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The City of Trinidad Fire Department is not a separate entity from the City of Trinidad and, therefore, all claims against the City of Trinidad Fire Department are DISMISSED and the City of Trinidad Fire Department is DISMISSED as a party-Defendant to this action. All further filings should omit the City of Trinidad Fire Department from the caption;

2. Defendant's Motion to Strike (ECF No. 56) is DENIED as moot;

3. Plaintiff's claim brought under 42 U.S.C. § 1983 has been ABANDONED and judgment shall enter in favor of Defendant on this claim;

4. Defendant's Motion for Summary Judgment (ECF No. 38) is GRANTED IN PART and DENIED IN PART;

5. The Clerk shall enter judgment in favor of Defendant on Plaintiff's retaliation claim; and

6. Plaintiff's hostile work environment claim shall proceed to trial against the City of Trinidad.

Dated this 7th day of June, 2012.

BY THE COURT:

William J. Martinez
United States District Judge